**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRYAN ZUIDEMA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11-cv-306 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| RAYMOND CHRISTOPHER, INC., | ) | |
| *a Michigan corporation d/b/a* | ) | |
| CINNABON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bryan Zuidema sued his former employer, Defendant Raymond Christopher, Inc. d/b/a Cinnabon, for sexual harassment and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and under state law for battery and intentional infliction of emotional distress. Before the Court is Defendant's motion for summary judgment [35]. For the reasons stated below, the Court grants Defendant's motion for summary judgment [35] on Plaintiff's claims of sexual harassment and constructive discharge and dismisses without prejudice Plaintiff's state law claims for battery and intentional infliction of emotional distress.

**I.     Background**

On September 18, 2009, Plaintiff started working for Defendant as the manager of the Cinnabon in the food court at the Chicago Ridge Mall. The store was to have its grand opening a few days later. Jonathan Ackerman, the alleged harasser, was employed by Defendant as a corporate trainer. Ackerman was temporarily assigned to Cinnabon to help get it up and running.

Plaintiff claims that Ackerman's harassment started on his first day, when he told Plaintiff and other Cinnabon employees that he "liked guys" and talked about gay sex.

Ackerman also allegedly summoned Plaintiff by saying "hey sexy, come here." On Plaintiff's second day of work, Ackerman allegedly said that "he would like to take [Plaintiff] out in the back in the shed and have his way with him" and that he was going to "bend [Plaintiff] over * * * and have his way with him." Plaintiff told Ackerman to "knock it off." Later the same day, Plaintiff leaned over to pick up a tray and Ackerman said "oh nice" and "can you do that again." Wendy Koslowski, Plaintiff and Ackerman's boss, allegedly overheard the comment and pointed out that Plaintiff's face had turned red. Plaintiff maintains that Ackerman and Koslowski started laughing. Plaintiff told Ackerman to stop it, and that he found his comments "totally disrespectful." On Plaintiff's third day, Ackerman again made comments about taking Plaintiff out to the shed and about how his pants fit "nice and tight." Plaintiff claims that Koslowski overheard these comments but did nothing. Plaintiff again told Ackerman that his comments were unwelcome. Around this time—just after Defendant's grand opening—Koslowski left town and did not return during Plaintiff's employment at Cinnabon.

On Plaintiff's fourth day, Ackerman said to Plaintiff "I see you shaved your head but not your face," and then Ackerman touched the side of Plaintiff's face with his hand and said "I love rugged men." Plaintiff told Ackerman to stop, and Ackerman said that he needed to have an open mind. On Plaintiff's fifth day, Ackerman again talked about taking Plaintiff out to the shed and how the dough balls "reminded him of real balls on men."

Ackerman's behavior continued in this way for about another week. For example, when Plaintiff made a mistake and said "that sucks," Ackerman responded that "it's not if you suck but how well you suck." More generally, Ackerman persisted in announcing his own sexual habits and preferences. Finally, Ackerman touched Plaintiff a second (and final) time when he rubbed Plaintiff's neck for about five seconds until Plaintiff told him to stop.

2

Plaintiff gave his two-week notice to Ackerman on September 29 or 30. Plaintiff told Ackerman that his actions were a reason that Plaintiff was quitting. Soon after Plaintiff gave his notice, Koslowski called Plaintiff to talk. When Plaintiff told her about his issues with Ackerman, Koslowski said "I'll take care of it." After Plaintiff spoke with Koslowski, Ackerman became "more standoffish" and made some unwelcome comments but he did not touch Plaintiff again, and the harassment ended completely when Ackerman finished his work at the Chicago Ridge Mall Cinnabon on October 2, 2010. Plaintiff's last day at Cinnabon was October 14, 2010. Within a week he had a new job at a Speedway gas station. Plaintiff had applied to Speedway around the same time that he had applied for the job at Cinnabon.

As a result of the alleged harassment, Plaintiff claims to have suffered loss of sleep for several weeks. Plaintiff further testified that when sexual harassment is discussed at his new job, it makes him think about Ackerman's conduct and that interferes with his work. Plaintiff has not spoken with a therapist or doctor about emotional issues resulting from the allegations.

**II.     Summary Judgment Standard**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson,* 477 U.S. at 252.

### III. Analysis

For Plaintiff's claim of sexual harassment to survive summary judgment, Plaintiff must show that there is a material dispute about whether: (1) his work environment was objectively and subjectively offensive; (2) the harassment was based on his sex; (3) the harassment was "sufficiently severe or pervasive to have altered the conditions of [his] employment such that it created an abusive work environment"; and (4) there is a basis for employer liability. *Passananti v. Cook County*, 689 F.3d 655, 664, 667 (7th Cir. 2012).

Looking at the evidence in a light most favorable to Plaintiff, there is no question that the first two requirements are satisfied. For example, it was objectively offensive for Ackerman to tell Plaintiff that he was going to take him out to the shed and bend him over. Ackerman's advances, if the Court can call them that, were unwelcome and clearly agitated Plaintiff. And Ackerman's behavior indicates that he targeted Plaintiff with his comments and attention because Ackerman found Plaintiff sexually attractive—which is to say, Ackerman targeted Plaintiff because of his sex.

Whether Ackerman's conduct was severe or pervasive enough to create an abusive work environment is a much closer question. "In determining whether the harassment rises to this

4

level, [the Court] consider[s] the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *E.E.O.C. v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 432 (7th Cir. 2012) (quoting *Gentry v. Export Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001)). As the Seventh Circuit has explained, it can be difficult to determine when sexual harassment is actionable under Title VII:

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers. We spoke in [*Carr v. Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007, 1010 (7th Cir. 1994)] of 'the line that separates the merely vulgar and mildly offensive from the deeply offensive and sexually harassing.' It is not a bright line, obviously, this line between a merely unpleasant working environment on the one hand and a hostile or deeply repugnant one on the other * * * .

*Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995) (internal citations omitted).

The cases show that where there are only a few rude comments and no touching, as in *Baskerville* or *Patt v. Family Health Sys., Inc.,* 280 F.3d 749, 754 (7th Cir. 2002), or where the offensive conduct was sporadic and touching brief (and not so severe as to be a sexual assault), see *Hilt-Dyson v. City Of Chicago,* 282 F.3d 456, 459-61 (7th Cir. 2002), offensive conduct will not be actionable under Title VII. But where there are numerous offensive comments, *Passananti*, 689 F.3d at 668 (eighteen sex-based comments in ten months), or where there is regular "unwelcome touching" coupled with "offensive sexually-based remarks," *Jackson v. County of Racine*, 474 F.3d 493, 500 (7th Cir. 2007), then courts generally conclude that the conduct at issue has crossed the line that separates boorish misbehavior from harassment.

This case is close to the line. On the one hand, Ackerman barely touched Plaintiff, the comments were more childish and stupid than threatening, and they lasted only two weeks. On the other hand, Ackerman did touch Plaintiff, and the barrage of comments, however ridiculous, was consistent and offensive. Ackerman embarrassed Plaintiff and made him uncomfortable in his new job. At this stage, the Court assumes that, looking at the evidence in a light most favorable to Plaintiff, Ackerman's conduct was sufficiently pervasive to be actionable; however, Plaintiff's claim fails for a different reason: there is no basis for employer liability.

On that score, the first important point is that Ackerman was not Plaintiff's supervisor for purposes of Title VII. That matters, of course, because an employer may be strictly liable for harassment by a supervisor but may only be liable for a non-supervisor's harassment if the employer was negligent in controlling working conditions. See *Vance v. Ball State University*, 133 S. Ct. 2434, 2439 (2013). *Vance* resolved the circuit split regarding who qualifies as a "supervisor" under Title VII: some circuits, including the Second and Fourth, followed an "open-ended approach * * * which ties supervisor status to the ability to exercise direction over another's daily work," other circuits, including the Seventh, "have held that an employee is not a supervisor unless he or she has the power to hire, fire, demote, promote, transfer, or discipline the victim." *Id.* at 2443. The Supreme Court confirmed the Seventh Circuit's approach and held that "an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.,* to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Among other reasons, the Supreme Court adopted this rule because this

6

"understanding of the concept of supervisor * * * is easily workable; it can be applied without undue difficulty at both the summary judgment stage and at trial." *Id*. at 2444 (internal quotations omitted).

When Plaintiff argues that Ackerman was his "supervisor" at Cinnabon, it is evident that he is using the term in the colloquial sense—as someone who could exercise some authority over his day-to-day activities, but not as someone who could effect a significant change in his employment status. See *id.* at 2443. According to Plaintiff, Ackerman oversaw cleaning the bakery, moving in equipment, training, maintenance, spreadsheets, and assisted with hiring. As Plaintiff admits, however, Ackerman was not able to fire employees without permission from Koslowski; rather, the record is devoid of evidence that Ackerman had the authority to fire, demote, or reassign Plaintiff. As Plaintiff explained in his deposition:

> Q. Were you ever given the impression that Jonathan Ackerman was going to be rating your performance?
> A. No.
> Q. Were you ever given the impression that Jonathan Ackerman had any ability to terminate your employment?
> A.  No.
> Q. Were you ever given any indication that Jonathan Ackerman was, so to speak, higher than you on the food chain?
> A. No.
> Q. Did you believe that Jonathan Ackerman was a supervisor?
> A. No.
> Q. Did you believe that Wendy [Koslowski] was a supervisor?
> A. Yes.

Pl.'s Dep., [34-5] at 68-69. If Plaintiff himself did not think that Ackerman was his supervisor, then the Court would hope to see substantial evidence to the contrary to support Plaintiff's position in the present motion—namely, that Ackerman really was Plaintiff's supervisor in the relevant sense. Plaintiff points to no such evidence.

7

Ackerman, then, was not Plaintiff's supervisor, so to survive summary judgment Plaintiff must show that there is at least a material question about whether Defendant was negligent in failing to control the workplace. Plaintiff rests his argument on the fact that Ackerman's offensive comments were made openly and were overheard by others—including Koslowski, although she was not present at the Cinnabon after the first week of Plaintiff's employment. Thus, Plaintiff's theory is that Koslowski should have noticed that Ackerman was harassing him and should have taken the initiative to stop Ackerman.

On these facts, even if Koslowski overheard a few of Ackerman's comments during the first week of Plaintiff's employment, she was not privy to the full onslaught of Ackerman's comments and behavior. And, as previously indicated, even considering the full two weeks of offensive behavior, this case is close to the line on whether Ackerman's conduct was sufficiently pervasive to be actionable. Thus, having only heard a few of the comments during the first week (and not observed any unwanted touching), it was not negligent for Koslowski not to intervene without first receiving a complaint from Plaintiff. Once Plaintiff complained to Koslowski about Ackerman—after Koslowski contacted Plaintiff when she received notice of his intention to leave—she immediately spoke to Ackerman and admonished him for his behavior. Approximately two days later, Ackerman left the Cinnabon at the Chicago Ridge Mall and the harassment stopped completely. There is simply no reasonable basis for a jury to find that Defendant was negligent when it promptly took action on Plaintiff's complaint and the problem was eliminated within a few days.

Finally, Plaintiff alleges that he was constructively discharged because Ackerman's conduct made his working conditions intolerable. See *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). To prevail on such a claim, Plaintiff would be required "to show

8

working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress, thereby allowing an employer to address a situation before it causes the employee to quit." *Id.* (citations omitted). As discussed, Plaintiff did not give Defendant an opportunity to address the problem. And, in fact, by the time that he stopped working for Defendant, the harassment had stopped. Although there may be a close question of fact as to whether Ackerman's conduct was sufficiently pervasive to constitute sexual harassment, no reasonable jury could conclude that it was so egregious that leaving the job before giving Defendant a chance to remedy the situation and after the harassment had stopped entirely was a "fitting" response. See, *e.g.*, *Porter v. Erie Foods, Int'l, Inc.*, 576 F.3d 629, 639-640 (7th Cir. 2009) (constructive discharge claim where the plaintiff was subject to repeated threats of violence); *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1198-99 (7th Cir. 1992) (threats with gun).

Accordingly, Plaintiff's federal claims must be dismissed. With that, the Court must decide whether to retain jurisdiction over Plaintiff's state law claims for battery and intentional infliction of emotional distress. See 28 U.S.C. § 1367(c)(3). The Seventh Circuit, animated by the principle of comity, consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly,* 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.,* 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir. 1993); see also *Wright v. Associated Ins. Co.,* Inc., 29 F.3d 1244, 1251 (7th Cir. 1994) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction * * * "); see also *Horton v. Schultz,* 2010 WL 1541265, at *4 (N.D. Ill. Apr. 16,

9

2010). In *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251–53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine judicial economy, convenience, fairness, and comity — will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13–217; *Davis v. Cook County,* 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice of the state law claims also is appropriate here because substantial judicial resources have not been committed to the state law counts in Plaintiffs' complaint. *Wright,* 29 F.3d at 1251. Finding no justification for departing from that "usual practice" in this case, the Court dismisses without prejudice Plaintiff's state law claims without discussing their merit under state law.

**IV.  Conclusion**

For the reasons stated above, the Court grants Defendant's motion for summary judgment [35] on Plaintiff's claims of sexual harassment and constructive discharge and dismisses without prejudice Plaintiff's state law claims for battery and intentional infliction of emotional distress.

Dated: September 10, 2013  _____
Robert M. Dow, Jr.
United States District Judge